Good afternoon, Your Honor. Sarah Welch for the United States. I'd like to reserve... Excuse me one second. I'm just going to change chairs. This one's higher than that one. Not being able to see who's talking. All right, thank you. Okay. Good afternoon. Sarah Welch for the United States. I'd like to reserve four minutes for rebuttal. All right. Watch your clock. Thank you. May it please the Court. The Supreme Court has already twice intervened in this case to permit the Secretary's decisions to terminate TPS for Venezuela to take effect. Those decisions provide ample reason for the Court to reevaluate its decisions in the case thus far, and the Court should now reverse. The TPS statute is skewed at several points toward termination of TPS designations. Instead of permitting an indefinite designation, Congress limited the length of extensions or designations. It required periodic review to ensure designation is still warranted. And if the Secretary concludes that a designation no longer meets the statutory criteria, the statute requires her to terminate the designation. When Secretary Mayorkas acted at the 11th hour to exceed the length limitations on an extension and took the novel step of consolidating off-cycle TPS terminations to effectively grant an unlawful extension of the 2021 Venezuela designation, the Secretary appropriately vacated that extension well before its effective date. Congress also limited judicial review in the TPS statute, recognizing that TPS designations, extensions, and terminations involve core executive branch prerogatives in matters of foreign policy, diplomacy, and national security, which are classic areas in which the judicial branch is ill-suited to second-guess the political branches. Concluding that the risks of judicial review outweigh the risks of executive branch error, Congress provided that there is, quote, of any determination of the Secretary with respect to the designation or termination or extension of a designation. The District Court mistakenly declined to give that limitation effect when it reviewed the three determinations regarding the extension or termination of TPS designations. A subsequent decision in the passage of time has now mooted the Haiti portion of that decision, so just two of those conclusions with respect to Venezuela are before the Court now. I'd welcome any questions the Court has. Otherwise, I'd like to begin with the bar on judicial review. All right. Would you just begin with, I just want to understand why you believe, what language in the Supreme Court stay orders you believe actually affect this case. Sure, Your Honor. The Supreme Court applies the winter test to evaluate whether to grant a stay in any case. The factors in winter and akin require consideration of whether the government is likely to succeed on the merits of a subsequent appeal and whether a case likely merits Supreme Court review. In order to grant its stay, then, the Supreme Court must have considered the likelihood of success on the merits and concluded that the government was likely to succeed on the merits. I'd highlight two pieces of that. One is that we didn't defend on the merits against the plaintiff's arbitrary and capricious claims. We presented only the 1254A, B5A review bar as our argument. So the Supreme Court must have concluded, in order to grant a stay, that we were likely to succeed on the merits of that claim. And our only argument with respect to the vacater, with respect to the statutory authority claim in particular, was that the Secretary did have the statutory authority to vacate the Venezuela extension just a few days after it was entered. So the Supreme Court, again, must have concluded that we were likely to succeed on the merits of that claim. Whether or not it provided reasoning, published an opinion, we don't think affects whether it considered that, unless the effect of its decision on this Court. But the Court itself has, at least not to this point, stood on such a summary order as precedential. This is distinguishable from the Boyle-Wilcox pair. I think the two decisions in this case represent their own pair, where the Supreme Court treated its first stay order in this case as effectively controlling its second stay decision when it said the party's arguments and their relative positions remain the same. And so the same result was warranted. So I do think it's treated the first NTPSA stay decision as effectively controlling the second one in the same way that Wilcox effectively controlled Boyle. But what part of it? I mean, it could be there are plenty of factors. Is it possible that the Supreme Court could have decided the equities were so one-sided, given the executive action and deference to that branch that that controlled? How do we know to what extent these prior decisions were about the equities rather than the merits? Just based on the four-factor test that the Court considers that it's described as controlling its decisions, one of those factors being the likelihood of success on the merits. Right, but they're not elements, right? They're factors. So the Court itself hasn't told us that it was how it came out on each of those factors. All we have is that you fed in these four factors into the Supreme Court in your arguments, and it came out saying somehow that those factors work in that. I believe the Supreme Court has said that the likelihood of success on the merits is typically the most important factor, so I think it would be unusual to think that it hadn't evaluated that factor at all in reaching its conclusion. It's true that it hasn't provided us with analysis on how it applied each of those factors, but we do think that the Court should certainly take into account the Supreme Court's two interventions in this specific case as it evaluates. I would also like to speak to the plaintiff's lead argument in their brief that this panel's previous decision should control as a matter of precedent in this decision. We think that's incorrect for a couple of reasons. One, of course, we still have a pending motion for this Court to vacate its prior decision. We think the most orderly way to proceed would be to rule on that motion, grant that motion, and vacate the previous decision since it became moot well before we had the opportunity, just a few business days after it issued, well before we had the opportunity to seek further review. So the most orderly way to proceed would be to grant that motion and then proceed to address this one, even if the Court declined to do that or didn't consider the vacater motion before ruling in this case. Wasn't that just, didn't briefing just conclude on that motion? I believe it was a few weeks ago. I don't recall the exact date. But, yeah, I do think the most orderly way to proceed would be to rule on that motion before proceeding to rule on this case. I guess the question about how the, I guess the Munsingware Doctrine or the analogy would apply to vacating the prior motion. There isn't a, I mean, is our first order or proceeding order technically moot? Is that the right term for it? I think the case has become moot. That's how I would describe it. So an attempt to seek en banc reversal or Supreme Court review of the opinion would no longer be possible because the case is now moot. And so the Court has in at least three decisions that we cited in our briefing on that motion has decided to vacate an issued panel opinion when the case became moot. But it usually happens the other way, right? Where we're here in the middle and the Supreme Court, something happens that moots the case between us and the Supreme Court and the Supreme Court then Munsingware says, well, the Court of Appeals probably ought to vacate that. But in this case, the operation of mootness is coming from the District Court now, right? So do we have any cases telling us that the mootness is the right way to think about it? District Court simply going ahead. I don't think there's any question that a jurisdiction to do so. Going ahead and wrapping up the case in its own time before you've had the opportunity. And I think we've seen petitions for re-hearing on a faster turnaround than a week. But before you did file your petition for re-hearing, why is that covered by mootness when Munsingware is more about us and the Supreme Court? Yeah, just a couple of points. First, even if we had been able to obtain authorization, draft a petition and file it in the three or four business days before the District Court entered final judgment after this Court's August 29th ruling, the full court likely wouldn't have been able to rule on that petition or even receive a response to that petition. In addition, we didn't have any reason to believe that we would need to file a petition 41 days before the due date in order to preserve our ability to continue to seek review of that decision. As to whether mootness is the right way to think about that, I don't have a case handy, but I believe we cited it in our papers in number 252120, indicating that it's well established in this Court's precedent that when a final judgment is entered, that does moot the appeal of the interim relief. So I do think mootness is the right way to think about that. And there's no question that we adequately guarded ourselves against mootness to the greatest extent we could. We repeatedly asked the District Court to stay its proceedings through the resolution of the appeal, which would include any en banc review or Supreme Court review. And, of course, we didn't ask the District Court to rule against us in entering final judgment. I think the judgment is merged into one, but I don't think it makes the opinion move. And that's... But that's for... We're going to have to have an oral argument on that, probably. Your Honor, we would be happy to appear for oral argument. I do recognize that's in a different case, so it's a little funny to talk about it here. The other points I wanted to make about whether the panel's previous decision should control here is that it was an earlier stage of the case. But isn't that in tension with the argument you just led with? The Supreme Court's decisions were in earlier stages of the case. We were... So, Supreme Court applying the Enkin factors and or Winter factors at a different stage of the case, that that should control us. But then when we applied the Enkin factors and the Winter factors at a different stage of the case, that that shouldn't control us. Your Honor, our position is that the court should evaluate, should give weight to the Supreme Court's evaluation of the likelihood of success on the merits. That's at least germane, even if it's not now precisely the same question that's before the court, which is actual success on the merits. The fact that the Supreme Court has chosen to twice weigh in and ruled in the government's favour on that factor, we think should at least be germane to the court's decision. So, in previous stages... And the same would be true of our prior decision in here. It would be germane to our decision now. Certainly, Your Honor. We're just arguing it doesn't formally control as a matter of precedent the court's previous decision, which I believe is the other side's position, although, of course, they can clarify that. All right, let's get to jurisdiction. Yes, Your Honor. Thank you. So, we think that both the vacater and the termination are determinations with respect to an extension or a termination of TPS. So, the plain language meaning of determination is just a decision. So, the Secretary made a decision. It was any decision. That's a broadening term. And it was certainly with respect to an extension. A vacater of an extension is a decision with respect to an extension, and a termination is certainly a decision with respect to a termination. In support of that, I would particularly direct the court to a provision of the statute that we cited in our reply brief, subsection D.3, which requires the Secretary to publish notice of the determination, which is clearly using that word in the meaning of her decision. She's supposed to publish notice of her decision. As to the sort of presumption of consistent usage argument that the plaintiffs have pressed in their brief, we just don't think that that holds up as a way of reading the statute. The subsection B doesn't use determination to refer only to country conditions, since it also covers a national interest determination. Subsection B uses finding and determination interchangeably, even when it is clearly referring to country conditions. And determination isn't a distinctive or defined term in the TPS statute that's likely to have picked up a specialized meaning. It's also used elsewhere in section 1254A itself to refer to things that clearly aren't about country conditions, such as a determination about whether a particular individual is eligible for TPS. So we just don't think that the plaintiff's reading of determination to create this sort of specialized meaning for one particular subsection of the statute, when it's an extremely commonly used term and is used in other sections of the statute inconsistently with that meaning, we just don't think that that holds up. Even if the district court were right that it refers only to the subset of decisions that the plaintiffs are pressing, the plaintiffs aren't challenging a general procedure or a collateral practice here. They're challenging one specific decision, two, with respect to one specific country. They haven't cited anything that could count as a final agency action separate from those. And the relief that they're seeking is to set aside the determinations. That's the relief that the district court entered. So it's hard to see how they're not seeking judicial review of a determination, as opposed to some freestanding collateral practice, like the procedural due process issues that were at issue in McNary. So we just don't think that their reading of the statute holds up to the statutory text itself. As for section 1252F1, just a couple of points on that. One is that the plaintiffs and the district court haven't given a meaning to the second term in the phrase enjoin or restrain. And I would also point out that the panel's previous opinion treated the section 1252F1 question as controlled by immigrant defenders. That decision was in the 705 posture, and as far as I'm aware, there's no decision specifically on the section 706 posture. So the previous reasoning in the panel's opinion wouldn't cover this section 706. Why would that matter? There are two different forms of relief. So section 705 gives its own criteria for what it is, what it does. Isn't 705 more... I took it this was the government's argument the first round... more like an injunction than a 706 vacater. Your Honor, I'd make two points about that. One, a section 705 ruling certainly is functionally indistinguishable from a preliminary injunction. That's a very familiar form of relief that the same factors apply. If it are set-asides injunctions? Your Honor, the district court made the conclusion in our post-judgment briefing that it was... it did count as an injunction for purposes of Rule 62 for the effective date of the judgment. So that particular decision, I think, cuts strongly in our favor as per section 1252-F1 arguments. The other point is that we now have the district court's decision to enforce the judgment. Its conclusion that compliance with the judgment required DHS to update its website and actually to reopen its registration portal. So even if there were doubt at the interim relief stage about whether this was truly an injunction or a restraint on the government, those subsequent developments should make this a particularly easy case to see why section 706 should fall... section 706 relief should fall within the 1252-F1 bar. Ms. Welch, I did have a question. I wanted to turn to a question I asked previous counsel. What we were to do with the many statements made by the Secretary, arguably indicating animus towards Venezuela. He pointed me to Trump versus Hawaii, which in his mind indicated that we cannot consider statements made by the Secretary and the President when they were not in office. I've read that case, and I don't know if it stands for that proposition. Is the government's position still that point and that that's the authority, or are there other authorities that you want me to consider? Your Honor, I think that would be the principal authority for that point. I do think that in the posture of this case, at final judgment, the district court... or partial final judgment. The final judgment is partial because the district court hasn't resolved the equal protection animus claims. So I think that issue has less relevance at this stage of the case than it did at the section 705 posture where the district court had granted interim relief in part based on the equal protection claims. Well, let's assume that there's an argument that the Secretary exceeded her authority and that perhaps that it was arbitrary and capricious, the decision. If the court were to find that, then I'd have to consider those statements, wouldn't I? Your Honor, I don't believe that that formed part of the district court's partial final judgment. So I don't think that that would be a basis for affirming the district court. I think that would require a remand in this posture for the district court to pass on that ground. Am I wrong in remembering that the district court pointed out the long list of statements made by the Secretary and the President himself addressing the issue of animus? Your Honor, I don't believe anything in the district court's decision turned on that, and I don't believe that the district court has made any findings on the animus claims in this posture, other than to deny our motion for summary judgment in our favor on those claims. Of course, that denial isn't before the court in this posture. Okay. But your ultimate answer, it's my understanding, is that you're standing on that case. Your Honor, I think we would request the opportunity to brief those issues if the court is intending to rely on any equal protection claims or findings of animus in this posture. I do think I stand by our reading of Trump v. Hawaii that statements before the President came into office were not relevant. All right. Thank you. I'd also point to Regents in support of that point as well. I see I'm very near the end of my time, so I'll reserve whatever's left for rebuttal. Thank you. Thank you.  Good afternoon, Your Honors. Ahilanar Alanandam from the UCLA Center for Immigration Law and Policy for the National TPS Alliance and the individual plaintiffs. I'd like to start with the point about the Supreme Court stay orders in this case. They're not precedent because the Supreme Court does not treat them as precedent as to itself. It stays orders and then affirms them. It also declines the stay orders and then reverses them. We cite examples right at the opening of our brief. No lower court also has ever treated the stay orders as themselves precedential. The government cites this case from the Fourth Circuit, Casa v. Trump. That case is reversed on bank, if you look at the Westlaw flag in it. I'm not aware of any court which has said that you can treat these orders as precedential. Beyond that, we agree with what you were saying, Judge Johnston, on this subject. Even that they describe even the winter or they're not exactly winter. It's a deviation from that as a guide to what they're doing. And the internal logic of these orders does not prove that there's no jurisdiction over this claim. If you were going to try to read tea leaves and divine from them, which is quite difficult to do, but if you were going to do it, the second paragraph of the first postponement order, which we actually discussed last time, suggests that there is a claim that we can make that it's illegal for the government to retroactively invalidate already issued documents. That is a claim about the statutory authority, which would suggest at least that the first order claims, as you all described them last time, would be cognizable on jurisdiction. I should add that claim is affirmed. We won on that claim in a subsequent 705 motion. It's affirmed in the summary judgment order here. The government has said nothing about it. I still don't know whether they think there's jurisdiction over that claim or not and how to reconcile the fact that they've never appealed it or challenged it in any way with their jurisdictional position. They're completely in tension with each other. Beyond that, there's also a constitutional claim there, which you would imagine the Supreme Court did not reverse on jurisdiction. So I think it may be possible that there was no single rationale, and rather than guessing, you just have to apply the law as it is. On the vacatur, Your Honor, I actually, I was prepared. We could talk about it now or talk about it later. I'll just say very briefly, and then happy to answer more questions about it if it makes sense. It's not jurisdictional because this court's decision was not moot when it was published, and that's the rule. The en banc case is Dixon v. Ryan, and if it's, at the time that it's published, it's still live, then there's no Article III problem, and instead we're in the question of equities. Of course, you have the equitable power to take back your opinion if you want, but they have quite unclean hands when it comes to the equities of that because what they told the district court to do was to wait until the Ninth Circuit rules. And now if I understand their argument today, they're saying, well, what we meant by that was when you rule and if there's an en banc, then when the en banc happens, and then presumably under the logic of their argument, if the en banc panel rules in like a year or something, then wait for the Supreme Court. And that's just, that's, you know, the logic of that doesn't make any sense. I mean, often it's true that published decisions in preliminary relief context become the law of the circuit. So I have a question that you brought to my mind. I don't know if somebody... At some point in February, is it? Will this, aspects of this case actually become moot? Quite possibly, Your Honor. I don't think in, well, I'm not sure about all the aspects, but the Haiti portion, whether or not it's moot, they want to withdraw their appeal from the district court order. We have no objection to that. If they want to withdraw it, that's fine. I mean, I really question whether that was moot, but if they want to withdraw their appeal of it... We have no problem with that. Okay. And they haven't asked for vacatur of the district court opinion. I don't think that would be justified because they're the ones who have effectively mooted it out by making a new termination. That's classic Munsingware, right? The party that, you know, below... It's not classic Munsingware, but anyway, they can't win mootness. They can't win a vacatur where they are the ones who have taken the step to make it go away. But they haven't asked for that anyway. We have no problem with withdrawing their appeal, and then Haiti is not part of this appeal right here. It's still very much a part of this case because we've now challenged that new termination, and many of the same defects that are at issue in this appeal are also at issue in the new Haiti termination. The only other... I want to talk about jurisdiction as well, but there's one other thing I wanted to say quickly before I get into it, which is, Judge Mendoza, to answer your question, the district court cites that litany of statements in excerpts at page 60, so it's sort of farther down in the decision. It's relevant, certainly, to denying the government's, you know, cross-motion for summary judgment on the discrimination claims, but it is also relevant to predetermination because what they show is that there is a separate motive and a preexisting motive for terminating TPS, which is animus, and that is, of course, relevant to the question when there's pretext, which is one of the grounds for the APA finding by the district court here. So if I could turn to jurisdiction, I think NTPSA 1, the opinion that this panel issued already, controls on this question of whether the statutory authority claim, which is the vacatur authority claim, is cognizable. And it's the law of the circuit. You have to apply it. They've also given you no reason to change your mind suddenly just a few months down the road. Does it matter that it was at a different stage where the underlying question was likely to succeed on the merits? I don't think so where it is written as a statement of a description of law. So, you know, as I understand the court's law of the circuit, law on the subject now, you can choose to describe your opinion as preliminary in some way. And if you choose to describe it that way, then it doesn't create that same effect. If you instead just describe a set of legal rulings, then they are treated as law of the circuit. That's my understanding of where it is. And that's why I think it's fair to ask. I don't know whether the NTPSA 2, the order that you issued on the stay proceeding in this case, whether you would treat that as entirely binding or not. It sort of depends on your conception of how you understood it. But anyway, I think NTPSA 1 clearly seems to me like it is law of the circuit. There's nothing there. In your description of the statutory authority, the case law you're citing, nothing there suggests that it's preliminary in any respect. But even if you want to work from first principles, they're just making basically the same arguments again. And they still haven't answered the central problem, which is if they are right, can the government issue a TPS extension for 50 years? Can they retroactively invalidate all the documents? Can they issue a termination with no notice, even though it says 60 days notice? Did Congress intend to make those claims cognizable or not? And it seems obvious to me that they must have intended to make such claims cognizable. I think the government has suggested throughout, including here today, that aspects of the orders, the determinations made at issue here were legally unsound in some ways. So someone else could come and challenge those and say we should vacate, set aside those determinations on kind of the same pattern here, but in the opposite direction, and a court could do so. Why can't the executive do that on its own? That's the merits question, right? The merits question. Okay. The executive cannot do that because the statute says that a termination only takes effect at the end of the period of the prior designation or extension. And so the statute says once you have made an extension, it lasts for the time period that's given in the Federal Register notice. So you'd say that whoever would challenge the determination, the designations, they'd lose on the merits. But in other words, whether or not there are instances in which the executive could find a designation to be unsound, this isn't one of them. Yes. I think the answer is yes, Your Honor. Because it's nowhere written in the statute, this vacate your power, we have to look to the structure of the statute and its text to see whether imagining such a power is inconsistent with the statutory scheme. That's my understanding. The government could have, for example, sought a declaratory judgment saying that this designation is illegal, bring all the same claims that you're bringing but in the other direction, but they haven't backed up the arguments that that's not how they proceeded. Instead, they used this implied assertively inherent power. Yes, exactly. And certainly it's true that if there were litigation, whoever could bring it, a state might have standing nowadays, whoever would have standing, somebody could bring it and they could take that effect. But the government cannot vacate an extension because there's nothing in the statute which gives them authority to do that. That being said, you could carve out situations where the government actually gives as a reason that it's illegal to do what we have done. I don't think that's in the statute. I don't think there's a justification for it, but if it was a concern of your honor, you could say, this is a different question that we don't have to decide. They haven't done that here. And in fact, if they had given legal error as a reason, then of course we could challenge that and say, no, you're wrong. The closest hint that comes to that is this point about the 21 versus 23 designation, which my friend reiterated today. I don't want to beat it again, but that's just wrong. Everybody who's eligible under 21 is also eligible under 23. It doesn't matter whether you make one registration period or two registration periods for those purposes. There's nothing illegal about what they did, as your honors explained in the footnote here in anti-PSA one already. But if I may, there's two other things that I think really are important about jurisdiction that I would like to address because they're not addressed in anti-PSA one. They're not at least explicitly addressed in the stay order in anti-PSA two. And I do think they're very important both for the merits claims that are here in this case and for the Supreme Court, assuming that we go to the Supreme Court. The first one is the district court's claim that there was a timing error here because the consultation did not happen before the decision and also that there was no consultation and that there was no country conditions review, no meaningful country conditions review. Those claims are also cognizable because they go to the statutory authority, just like the claim about whether there's a vacature authority and just like whether you can cancel already issued documents, et cetera. And that comes from B3A of the statute, which says, this is the opening of the periodic review section, which says the attorney general, after consultation with appropriate agencies, shall review conditions in the foreign state and shall determine then whether the conditions warranting designation continue to be met. And so those requirements are just the same, just like you can't issue a TPS designation for 50 years and you can't cancel issued documents, you can't issue a termination with no notice. These are also shall obligations in the statute. The secretary has an obligation to engage in consultation and country conditions review before they make the determination. So there's jurisdiction. Are you saying that in the three days that they had after they came into office, that was not sufficient? What if they sent an email or received information or I don't know? So there's a factual finding. Now we're talking about merits, and I hope we win on the merits, but I want to make very clear, either way, this is a statutory authority claim, what you call the first order claim, right? On the merits of that, Your Honor, there's a factual finding in the district court opinion, excerpts at 51, that the secretary made the decision to terminate before consultation. So that's reviewable for clear error. That's reviewable for clear error. And there's a lot of evidence to support that finding. For one thing, they actually wrote a shell, like a shell termination document without any country conditions evidence at all, and then were like, fill it in once we get the thing. The only evidence that there's no evidence, that's one. Second, there is no evidence of any contact between the State Department and the DHS on this subject, on this termination, until the Marco Rubio letter, which comes in in the afternoon, like after four o'clock, if I remember right, on the 31st of January, the day before the termination is going to happen. And it is, that also suggests there isn't, there's not, in fact, consultation going on, and they have to prove it. They have to prove it once we have prima facie evidence that there isn't consultation, because this whole thing happens in something like six or eight days or something, and there's no evidence of it whatsoever, and they've never shown that there was consultation. They did show, I think, wasn't there evidence that the Secretary reviewed the August 24 Biden country conditions report? Well, there's evidence that it was, there's not evidence that she reviewed it, but there's evidence that it was before the Secretary, and what the district court said about that was that it is disingenuous, because there's nothing cited from it, that's at ER 52, and because if you look at that report, it is strongly advocating extension of TPS for Venezuela, because of political repression, because of drastic food insecurity, all of this harm that's happening there, and those things just get left out of the decision, of the FRN. Instead, what they do is when there's, they're looking for improvements. That's what the evidence shows. They're looking for improvements, and when they don't have anything to show about that, because things are just getting worse and worse in the country, they just say, just admit it, and they don't talk about it. The other thing I would say on this subject, well, I can say more on the merits about that, but I also do want to get to the third jurisdictional point. I don't know if the... Actually, let me just say one more thing about that, which is this court's decision in the California wilderness case talks about what is involved in consultation. Now, that's a statute that is pretty similar to this one in that it just says the Secretary of Energy has to, in consultation with states, then write a report about some energy, power transmission things, and this court reads that to require meaningful consideration of the viewpoint of the people being consulted and good faith consultation, and if you look at the facts of that case, it's a very detailed opinion. There is some input and some back and forth that's going, certainly more than what happened in this case, Judge Mendoza, but they say it's not enough, because it's not enough to just sort of pay lip service to it. Consultation, when Congress writes a consultation requirement, it means meaningful consultation. And same with country conditions review. There's no Department of State report. This is in the stay order. Your Honors had already talked about this. There's no Department of State report. There's no report from the Research Analysis Office of DHS. We've typically conducted this kind of more searching review of administrative procedures. I mean, I think all your cases are in the domestic context, so how do we know that those all map on to, I mean, even the Supreme Court in terms of the census case, how do we know that those map on to the foreign relations context here? I'll give you two, Your Honor. First, Biden v. Texas, which is the Remain in Mexico case, although the government wins that case, at the end, the Supreme Court is very clear, saying, look, the decision-making that the government has to make in this context, which is about paroling people in from abroad in the border, in the asylum context, is subject to the APA and is subject to the APA's constraints. And they're saying that as a way of saying, like, on remand, Texas may still be able to argue that the decision-making in this context does not satisfy the APA. And the second one, it's not admittedly right on the border, but its immigration policy is the Regions case, which I know Your Honor is familiar with. There's a very robust application of the rule that you have to consider alternatives, and they reverse on that basis. So those would be my two cases to say that the APA doctrine in this context applies and should apply in the same kind of way. The dispute we're having over the meaning of determination, I'm gonna go back, if it's okay, and talk about jurisdiction for the third claim, right? The dispute that we're having over the meaning of determination is really only relevant for these claims about unexplained departures from past practice and pretext. Because our first two claims, the vacature authority claim, and also the no consultation and the timing violation, that the decision was made before the consultation review, those are statutory authority claims. But still, I think determination, it is important for the court to construe determination to get to our unexplained departure from past practice claims. And what I would say there, Your Honor, is they go back and forth about whether or not they think that you can... TPS extensions for 50 years are unreviewable, so I don't know what their current view is on that. But, you know, to me, it just seems absurd to think that Congress would have intended to bar statutory authority claims, right? And you already said that in NTPSA 1. But then my question is, what is the textual basis for carving them out? Because their argument is it's any decision. Determination is any decision related to TPS. And obviously the determination, if you want to use their word for it, that TPS extensions can be 50 years, that's fine. That's a decision about TPS. So why isn't that barred under their theory? And they have no account of why these parade of horribles, of crazy things that would happen, including what the Supreme Court suggested would be cognizable in this case in the second paragraph of the stay order. They have no textual account of how those claims can be carved out while other claims, like the arbitrary and capricious claims that we're advancing here, are barred. So I think it makes more sense instead to tie determination to the word determine. And I don't think where it appears in the statute. I'm not sure this is actually an application of what they call the consistent usage canon. It's just asking what does the word determination refer back to in the statute? And what it refers back to is the things that the secretary determines. And construing the statute that way would be very consistent with how this court construed it in cases applying McNary, Proyecto San Pablo, Immigrant Assistance Project. And there's a number of immigration jurisdiction cases, all different kinds in this court, where the court has said statutes that have broader language, like any cause or claim arising from, no decision or action, no judgment in Patel, JEFM, Gebhardt v. Nielsen, which is sole and unreviewable discretion, those broader statutes, those take out, some of them take out or channel APA claims. And I think this statute is not nearly as broad as those. Right up until NACA, a very recent decision of this court, you've consistently said when this broader language is used, then we find those kinds of claims barred. When it's narrower, we don't. I see I'm out of time. The last thing, if I may just briefly mention, Your Honor, there was a point about whether we have shown any harm to NTPSA members, because it's relevant to the scope of relief and it's relevant to how this court approaches this case. And I just wanted to point the court to the Emilia Garcia declaration, which is in the supplemental excerpts of record at 16 to 28, and also the Jose Palma declaration, which is farther down. It's at supplemental excerpts 252 on, which documents the horrific harm, actually, that has come to NTPSA members in particular, people separated from their infant children, families deported, people detained, lots of people detained. And so we absolutely have shown harm in all 50 states. NTPSA members are in every state, and the harm that is happening, that's being occasioned by the fact that these illegal terminations have gone into effect, are affecting people all over the country. So I don't think there's any argument, even if this were not a 706 case. This is a 706 case, and as you said, they argued the opposite last time. And 706 doesn't have equitable factors in it. It just says, set aside the unlawful action. That's it. But even if that were not the rule, we have overwhelming evidence of people all over the country suffering catastrophic harm as a result of these terminations. And the district court's order is entirely appropriate in scope, given the harm that we have shown. Further questions? All right. Thank you, counsel. Ms. Welch? Thank you, Your Honor. Just a couple quick points. First, my friend referred to the parade of horribles that could result from having a judicial review bar, like a 30-year TPS extension. We do think that the review bar would cover that. That is our position. And that is the only time that a review bar has effect is when there is an error in the underlying decision that it's shielding. So that is what Congress would have expected when it foreclosed judicial review. That's not an absurdity. That's not an unexpected consequence. That is the effect of a judicial review bar. I would contrast that with the effect of not having vacatur when there is a judicial review bar, which even my friends on the other side concede covers at minimum country conditions, substantive evaluation of country conditions. If the secretary doesn't have this inherent vacatur authority, if the statute has foreclosed that, then a plainly erroneous assessment of country conditions can't be fixed by a court and can't be fixed by the secretary. It's just in effect. So I think that's the real consequence of the lack of an inherent vacatur authority. I see my time has expired. I would be happy to talk further about Haiti and if the court needs additional briefing to determine whether this claims are... Well, I'll give you an extra minute and a half because we gave it to the other side. Thank you, Your Honor. If there's an additional point you wish to make. Sure. Our view on the Haiti partial vacatur is that that's the sole basis of the district court's decision on the Haiti claims. It didn't pass on the subsequent termination. So the district court's ruling rested solely on the partial vacatur. And the effect of the partial vacatur was just to shorten the extension by six months. Those six months will expire on February 3rd, which meant that the statutory periodic review timeline without any effect of the partial vacatur required the secretary to make a new decision. That's what she published on November 28th. So whether the claims became moot because of that superseding decision on November 28th or whether they will become moot in three weeks or so on February 3rd, the claims will be moot. And so that's the result of either the passage of time or the functioning of the statute, which is nondiscretionary. Are you withdrawing your appeal on that claim? We're asking for the court to vacate that portion of the district court's decision as moot because of mootness arising before the panel's decision. But they're not moot yet. They're either moot because of the November 28th termination on the ordinary statutory timeline or will at minimum become moot on February 3rd, which is the expiration of the Mayorkas extension. All right. We'd be happy to submit extra briefing on that if that would be helpful to you, Your Honor. Yeah, I think we would like maybe a letter brief, maybe supplemental letter briefs from both sides explaining that point. Yeah, I had taken the 28 J letters to request us to dismiss the appeal, which is not vacating the district court decision. Right. So we think that the judgment line should say that that portion, I think this is on the beginning of the last paragraph on page 2, the court should dismiss that portion of the appeal challenging the partial vacator and vacate the corresponding portion of the district court's decision under Munsonware since it became moot before the court could issue a decision on it. All right. Well, I'll look into that. Thank you, Your Honor. And if we do require supplemental briefs, we'll issue an order doing so. Thank you, Your Honor. All right. Are you finished, counsel? I'd be more than happy to... No, no, I mean, you've met your time. Right, yeah. But I just wanted you to say, you know, conclude. Sure, sure, Your Honor. If I could just... The last point would go to the consultation arguments. We think that creating a shell document doesn't in any way undermine the idea that there was consultation, doesn't support pretext, it's perfectly consistent with the ordinary decisional process for a subordinate to draft a decisional document before that document has final approval from the decision maker. And I would point out that the California Wilderness Coalition actually finds that for the portion of the decision where consultation did occur, that in part was considering sharing with the states a draft of the decision. So just having drafted a decision doesn't indicate the consultation hasn't occurred. And with that, thank you very much for the court's indulgence with the extra time. All right. Thank you, counsel. National TPS Alliance versus Kristi Noem will be submitted, and this session of the court is adjourned for today. Thank you. All rise. This court for this session stands adjourned.
judges: WARDLAW, MENDOZA, JOHNSTONE